UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 4:13 CR 406 CEJ |
| | ) | (TCM) |
| | ) | |
| CHRISTOPHER CHANNEL, | ) | |
| | ) | |
| Defendant. | ) | |

**DEFENDANT CHANNEL'S MOTION PURSUANT TO FED. R. CRIM. P. 12(b)(3)(B) TO DISMISS THE PORTION OF COUNT TWO INCLUDED TO JUSTIFY ENHANCEMENT UNDER 18 U.S.C. § 924(j)**

Defendant Christopher Channel, through his attorney, Assistant Federal Public Defender Michael Dwyer, moves pursuant to Fed. R. Crim. P. 12(b)(3)(B) to dismiss the portion of Count Two that concerns enhancement under 18 U.S.C. § 924(j) on grounds that this portion of the indictment alleges conduct over which the federal government has no jurisdiction. In support of this motion he states:

**Facts**

1.     The government has charged Channel in a two-count indict-ment.[1]

A.     Count One alleges: "On or about January 3, 2010, in the City of St. Louis, within the Eastern District of Missouri, Christopher Channel, the Defendant herein, did knowingly and intentionally distrib-

---

1.     *See* Exhibit A (indictment) (attached to this motion).

ute a quantity of cocaine base ('crack'), a Schedule II controlled substance drug."

B.    Count Two alleges:  "On or about January 3, 2010, in the City of St. Louis, within the Eastern District of Missouri, Christopher Channel, the Defendant herein, acting with others known and unknown to the grand jury, did knowingly possess a firearm in furtherance of a drug-trafficking crime which may be prosecuted in a Court of the United States, to wit: distribution of cocaine base ("crack"), as set forth in Count One of this Indictment, which is re-alleged and incorpo-rated herein; and in the course thereof, caused the death of a person through the use of a firearm, the killing of whom constituted murder as defined in title 18, United States Code, Section 111, in that the killing was committed willfully, deliberately, maliciously and with malice aforethought."

C.    Section 924(c) criminalizes " . . . any person who, during and in relation to any crime of violence or drug trafficking crime . . . for which the person may be prosecuted in a court of the United States, uses or carries a firearm, or who, in furtherance of any such crime, possesses a firearm, . . . ."  18 U.S.C. § 924(c)(1)(A)

D.    Section 924(j) provides enhanced punishment for a "per-son who, in the course of a violation of subsection (c), causes the

death of a person through the use of a firearm, . . . ."  This enhance-
ment raises the penalty for a section 924(c) conviction to "death or . .
. imprisonment for any term of years or for life . . . ."  18 U.S.C. §
924(j).

2.      It is undisputed that no killing, assault, shooting, or altercation of
any kind occurred during the drug trafficking crime alleged in Count One of
the indictment.

    A.      The conduct alleged in Count One was also the basis for a
state prosecution.  On January 3, 2011, Channel pled guilty to delivery
of a controlled substance as a prior and persistent offender in the
Circuit Court for the 22nd Judicial Circuit, Division 8, case number
1022CR2259, and received a 10-year sentence.

    B.      In stating a factual basis for Channel's plea of guilty, the
Assistant Circuit Attorney stated that "Christopher Channel knowingly
delivered .41 grams of cocaine base, a controlled substance to Ms.
Carrie Henderson Shaw, knowing that it was a controlled substance."
Plea Transcript at 9.  "Basically the defendant met Ms. Henderson
Shaw at the BP Gas Station lot and sold her this .41 grams of crack
cocaine."  *Id.* at 10.

    C.      Channel's transaction with Henderson-Shaw, the subject of
both Count One and the state-court conviction in case number

1022CR2259, was captured by video surveillance cameras at the BP gas station at 902 South Broadway, St. Louis, Missouri, where the transaction occurred.

E.    This video establishes that the crack sale occurred at the driver's side door to Henderson-Shaw's vehicle, that Channel immediately returned to the vehicle he had arrived in, and that Henderson-Shaw drove off of the gas station lot.  Shortly thereafter, the car Channel was riding in also left the BP Gas Station.

3.    It is also undisputed that later and approximately half a mile away, someone shot Henderson-Shaw while she was driving her car onto an entrance ramp to Interstate 55.  As she was entering the southbound lanes of Interstate 55, approximately half a mile from the BP gas station where she purchased .41 grams of crack, Henderson-Shaw sustained a bullet wound that caused her death.  It is this shooting and death, which are both spatially and temporally separate and distinct from Count One's crack transaction, that the government alleges as the murder that triggers 18 U.S.C. § 924(j).

## Argument

4.    A drug distribution, like Count One, charged under 21 U.S.C. § 841, is a delivery; that is, the actual, constructive, or attempted transfer of a controlled substance.  *See United States v. Weatherd,* 699 F.2d 959, 962

- 4 -

(8th Cir. 1983). The "unit of prosecution" under this statute is simply and unambiguously the delivery of controlled substances into the hands of another. *Id*.

6.     The criminal conduct alleged in Count One was complete as of the transfer of .41 grams of crack from Channel to Henderson-Shaw at the BP Gas Station. Henderson-Shaw drove away. Shortly thereafter, the car Channel was riding in drove away. During the conduct comprising the criminal activity alleged in Count One, it is undisputed that no shooting occurred and that Henderson Shaw was alive and well as she left the BP gas station.

7.     Nothing that happened after the transfer of crack from Channel to Henderson-Shaw and her driving away was part of the crime alleged in Count One. Therefore, nothing that happened after the completion of the crime charged in Count One can be part of the 924(c) crime alleged in Count Two.

A.     Section 924(c) defines a crime consisting of a predicate crime of violence or drug trafficking crime linked to use, carrying, or possession of a firearm. A defendant violates section 924(c) by either (1) using or carrying a firearm during and in relation to a predicate crime of violence or drug trafficking crime or (2) possessing a firearm

in furtherance of a predicate crime of violence or drug trafficking

crime.  *See* 18 U.S.C. § 924(c).

B.     Count Two alleges that Channel possessed a firearm in

furtherance of the drug distribution in Count One.  Once the distribu-

tion was complete, however, no subsequent conduct on Channel's part

could be in furtherance of an already completed crime.  Furthermore,

no logic permits the inference that shooting a drug buyer after a

distribution was complete and half a mile away could be in furtherance

of the already completed drug distribution.

C.     In Count Two, the government seeks to prosecute Channel

for a murder over which it has no jurisdiction.[2] In essence it attempts

to expand 924(c)'s "unit of prosecution" to cover conduct separated by

time and space from the conduct comprising Count One, the drug

distribution at the BP Station.[3]  To create federal jurisdiction where

none exists, the government somehow believes that a single drug

---

2.     Henderson-Shaw was not killed on federal property or in an area
under federal control.  The federal government has no jurisdictional basis for
prosecuting the murder of Henderson-Shaw.

3.     Courts differ about section 924(c)'s unit of prosecution.  *Compare United States v. Sandstrom,* 594 F.3d 634, 657-59 (8th Cir. 2010) *with
United States v. Cureton,* 739 F.3d 1032, 1040-43 (7th Cir. 2014).  These
differences, however, concern the number 924(c) convictions that are legally
permissible with a single use or carrying or possession of a firearm or a
single crime of violence or drug trafficking crime, a dispute that has no
bearing on the issues in Channel's case.  *See Cureton,* 739 F.3d at 1040-43;
*Sandstrom,* 594 F.3d at 657-59.

distribution of specific duration can be expanded to cover conduct that is both spatially and temporally distinct.

C.  Usually it is defendants who attempt to merge distinct events into a single crime, but courts have consistently rejected such efforts.

a.  In *United States v. Sandstrom,* defendants shot McKay because he was an African-American, drove around the block, located McKay again, and shot him a second time. 594 F.3d at 640-41. Although the two shootings were separated only by a short time and occurred within a few blocks of each other, the court of appeals had no trouble determining that they were separate events and separate crimes. *Id.* at 652. Because the two shootings were distinct crimes, separate 924(c) convictions arising out of each shooting were permissible, but the unit of prosecution for each 924(c) charge was defined and limited by the distinct predicate crime on which it was based. *Id.* at 656.

b.  In *United States v. Mejia,* 545 F.3d 179 (2nd Cir. 2008), defendants argued that three assaults based on two separate drive-by shootings that injured three victims were a single incident, clustered in time and space. *Id.* at 205. Each of the assaults resulted in a separate conviction and each of these

convictions, in turn, was the predicate crime for a 924(c) conviction. *Id.* The court of appeals rejected defendants' arguments that the separate and distinct assaults were a single incident. *Id.*

D.  Outside the context of section 924(c), courts have rejected arguments that events close in time and space should be considered as one rather than distinct, separate events. *See, e.g., United States v. Chappell,* 704 F.3d 551, 552 (8th Cir. 2013) (murder, burglary, and arson separate events even though the pause between crimes was brief); *United States v. Wright,* 356 Fed. Appx. 886, 887 (8th Cir. 2009) (per curiam) (unpublished) (two robberies committed ten minutes apart and in close proximity nonetheless separate events); *United States v. Gray,* 85 F.3d 380, 381 (8th Cir. 1996) (burglaries of houses near each other within twenty-five minutes nevertheless separate events); *United States v. Hamell,* 3 F.3d 1187, 1191 (8th Cir. 1993), (stabbing and shooting were separate events even though one occurred inside a tavern and the other outside this same tavern and only twenty-five minutes later).

E.  In *United States v. Willoughby,* 653 F.3d 738, 741-42 (8th Cir. 2011), which held that two drug sales should be counted as one event, the court of appeals analyzed (1) the time between events; (2) the physical distance between the location of each event; and (3)

overall substantive continuity.  The defendant in *Willoughby* distributed

drugs to a confidential informant and only seconds later distributed

drugs to an undercover police officer introduced to the defendant by

the confidential informant.  *See id.* at 741.  Thus, the two sales oc-

curred virtually simultaneously at the same location, motivated by the

same intent.  *See id.* at 741-42.  No such connection in time, space, or

substantive continuity exists in Channel's case to merge the drug

distribution and the shooting, which occurred at different times and

locations about half a mile apart and were self evidently motivated by

different intentions and impulses.

8.      By alleging facts to Count Two to trigger section 924(j)'s en-

hanced penalties, the government is attempting to charge Channel with a

murder over which it has no jurisdiction.  It attempts to invent jurisdiction by

transmogrifying a brief drug distribution--defined by an unambiguous statute

and undisputed facts–into a course of conduct covering events occurring half

a mile away and well after the drug distribution was complete.  Even more

troubling, the government has no evidence to establish who fired the shots

that killed Henderson-Shaw or where those shots came from.

9.      Finally, the government has no evidence to show that Channel

possessed a firearm during the drug distribution at the BP gas station.

Although forthcoming with discovery and candid about its case, the govern-

ment to date has acknowledged that it has nothing to establish that Channel possessed a firearm during the video-recorded drug distribution charged in Count One.  The government has no witnesses who saw Channel in possession of a firearm and the video surveillance at the BP station contains nothing to show that he was armed when he handed drugs to Henderson-Shaw.

10.    In these circumstances, allowing this case to be tried with Count Two alleging that Channel committed a murder over which the United States has no jurisdiction would prejudice Channel's ability to receive fair trial.  This jurisdictional defect in Count Two would overwhelm the jury's consideration of the evidence because there is no question that Henderson-Shaw died under gruesome circumstances from the gunshot wounds she received.

WHEREFORE, Defendant respectfully requests that the Court dismiss, pursuant to Fed. R. Crim. P. 12(b)(3)(B), the portion of Count Two concerning the penalty enhancement under 18 U.S.C. § 924(j) for failure "to invoke the court's jurisdiction or to state an offense."

Dated April 14, 2014.

Respectfully submitted,

/s/ Michael Dwyer
Assistant Federal Public Defender
1010 Market Street - Suite 200
St. Louis, Missouri  63101

Telephone: 314 241 1255
Fax: 314 421 3177
E-Mail: Michael_Dwyer@fd.org

Attorney for Defendant Channel


## CERTIFICATE OF SERVICE

Assistant Federal Public Defender Michael Dwyer certifies that he filed Defendant Channel's Motion Pursuant to Fed. R. Crim. P. 12(b)(3)(B) to Dismiss the Portion of Count Two Included to Justify Enhancement under 18 U.S.C. § 924(j) electronically with the Clerk of the Court to be served by operation of the Court's electronic filing system upon Assistant United States Attorney Sayler Fleming.

Dated April 14, 2014.


/s/ Michael Dwyer