UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DISTRICT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | NO. 4:13 CR 406 CEJ (TCM) |
| | ) | |
| CHRISTOPHER CHANNEL, | ) | |
| | ) | |
| Defendant. | ) | |

**UNITED STATES OF AMERICA'S MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION PURSUANT TO FED. R. CRIM. P. 12(b)(3)(B) TO DISMISS THE PORTION OF COUNT TWO INCLUDED TO JUSTIFY ENHANCEMENT UNDER 18 U.S.C. § 924(j)**

COMES NOW, the United States of America and in opposition to defendant Christopher Channel's Motion Pursuant to Federal Rule of Criminal Procedure 12(b)(3)(B) to Dismiss the Portion of Count Two Included to Justify Enhancement Under 18 U.S.C. § 924(j) (Doc. #33), states as follows:

## I.     INTRODUCTION

On October 2, 2013, a Federal Grand Jury returned a two-count indictment charging defendant Christopher Channel ("Defendant") with (1) distributing cocaine base ("crack"), in violation of Title 21, United States Code, Section 841(a)(1) ("Count One"); and (2) possessing a firearm during and in relation to the drug-trafficking crime in Count One, and in the course thereof, causing the death of a person through the use of the firearm, in violation of Title 18, United States Code, Section 924(c), and punishable under Title 18, United States Code, Section 924(j) ("Count Two").  Count Two also was charged under an aiding and abetting theory pursuant to Title 18, United States Code, Section 2. On April 14, 2014, Defendant filed a motion to dismiss the portion of Count Two included to justify the enhancement under Section 924(j). (Doc. # 33).

In his motion, Defendant essentially makes two "sufficiency of the evidence" arguments under the guise of a jurisdictional claim. To be clear, Defendant does not appear to argue that charges under Title 18, United Section Code, Sections 924(c) and (j), cannot properly be brought in federal court. Rather, without any applicable supporting authority and providing a simplistic view of the evidence, Defendant maintains that the Court does not have jurisdiction over such charges when the murder subject to the Section 924(j) charge does not occur simultaneously with, and instead occurs after, the predicate drug distribution. Defendant also alleges that the United States has no evidence that Defendant possessed a firearm during the drug distribution or of who committed the murder as referenced in Count Two.

Notwithstanding Defendant's arguments to the contrary, the entirety of Count Two as charged in the indictment is legally sufficient and, as a result, this Court has jurisdiction. Contrary to Defendant's apparent assertion, the drug distribution set forth in Count One and the use of a firearm to commit the murder of the victim in this case as set forth in Count Two are not spatially and temporarily unrelated or separate. Rather, the murder of the victim in this case by Defendant was the direct result of the drug distribution with which Defendant is charged. Furthermore, Defendant's argument with respect to whether or not the United States can establish the Section 924(c) charge or the sentencing enhancement under Section 924(j) is premature. It is well-established that it is within the province of the jury at trial, not the Court through pretrial motions, to make such a determination. Accordingly, Defendant's motion should be denied.

# I. STATEMENT OF FACTS[1]

At approximately 3:00 a.m. on January 3, 2010, victim Carrie Henderson-Shaw ("Henderson-Shaw") suffered two gunshot wounds, ultimately resulting in her death, while driving southbound on Interstate 55 in St. Louis, Missouri, immediately after purchasing cocaine base (crack) from Defendant. The drug transaction occurred at the BP gas station on South Broadway in downtown St. Louis, Missouri, within the Eastern District of Missouri, and was captured on surveillance video.

The surveillance video establishes that after the drug transaction between Defendant and Henderson-Shaw, Henderson-Shaw abruptly shut the driver's side door of her vehicle and quickly drove off of the gas station lot. The video also shows that Defendant then ran back to the passenger side of the vehicle in which he had arrived, briefly leaned in the vehicle, and then pointed what appeared to be a gun at Henderson-Shaw's vehicle as it passed by. Defendant is then seen on the surveillance video getting into the passenger side of his vehicle, which quickly pulled off of the gas station lot closely behind Henderson-Shaw's vehicle.

Within seconds of pulling off of the gas station lot, a witness who had accompanied Henderson-Shaw to the BP gas station stated she heard several gunshots. As Henderson-Shaw and the witness approached the entrance ramp to Interstate 55 from 7th Street– less than one half of one mile from the BP gas station, Henderson-Shaw informed the witness that Henderson-Shaw had been shot.[2] Henderson-Shaw immediately began to slow down, and her vehicle slowly veered toward the right, eventually coming to a stop after hitting a guardrail on

---

[1] This memorandum is not offered as a comprehensive statement of the Unites States' case. Instead, the purpose of this memorandum is to provide the Court with a brief summary of the United States' evidence that would likely be presented at trial. For example, the United States has not included in its statement of facts all witness statements or other corroborating evidence. This memorandum is also intended to serve as a guide for the Court and is not intended to be in the nature of a Bill of Particulars that would fix and/or bind the United States to a set theory of proof.

2 Two shell casings were recovered on that entrance ramp.

the shoulder just north of the Lafayette Avenue exit. One of the two gunshot wounds suffered by Henderson-Shaw was to the femoral artery, causing her to bleed out shortly after hitting the guardrail.

The United States expects to present evidence at trial that Defendant chased and shot Henderson-Shaw because she failed to pay him enough or at all for the crack cocaine. Soon after the murder took place, Defendant gave numerous conflicting statements to law enforcement officers. Though Defendant admitted selling the crack cocaine to Henderson-Shaw, he denied that she failed to pay him. Rather, Defendant stated that after Henderson-Shaw pulled off of the BP gas station parking lot after the drug distribution, an individual in Defendant's vehicle shot Henderson-Shaw in an attempt to rob her of any money in her possession. The United States will establish at trial that Defendant's statements regarding the murder are contrary to the evidence. For example, the United States will present testimony at trial that Defendant admitted to a witness that Henderson-Shaw essentially robbed him of the crack cocaine, but that he "got her back."

As a result, on October 2, 2013, a Federal Grand Jury returned a two-count indictment charging Defendant with the distribution and murder. Specifically, the indictment charges as follows:

### COUNT ONE

The Grand Jury charges that:

On or about January 3, 2010, in the City of St. Louis within the Eastern District of Missouri,

**CHRISTOPHER CHANNEL,**

the Defendant herein, did knowingly and intentionally distribute a quantity of cocaine base ("crack"), a Schedule II controlled substance drug.

In violation of Title 21, United States Code, Section 841(a)(1), and punishable under Title 21, United States Code, Section 841(b)(1)(C).

## COUNT TWO

The Grand Jury further charges that:

On or about January 3, 2010, in the City of St. Louis within the Eastern District of Missouri,

**CHRISTOPHER CHANNEL,**

the Defendant herein, acting with others unknown to the grand jury, did knowingly possess and discharge a firearm during and in relation to a drug-trafficking crime which may be prosecuted in a Court of the United States, to wit: distribution of cocaine base ("crack"), as set forth in Count One of this Indictment, which is re-alleged and incorporated herein; and in the course thereof, caused the death of a person through the use of a firearm, the killing of whom constituted murder as defined in Title 18, United States Code Section 1111, in that the killing was committed willfully, deliberately, maliciously and with malice aforethought.

In violation of Title 18, United States Code, Sections 924(c)(1), 924(j), and 2.

*See* Gov't Exhibit 1.

### III. ARGUMENT

**A. The Indictment is Legally Sufficient.**

In his motion, Defendant does not appear to (and cannot) argue that Count Two of the Indictment is insufficient as drafted. In this case, the two-count indictment properly informs Defendant of the charges against him; it advises Defendant of all of the essential elements of the offenses charged and alleges sufficient information to allow him to plead a conviction or acquittal as a bar to a subsequent prosecution.

Rule 7 of the Federal Rules of Criminal Procedure instructs, in pertinent part:

The indictment . . . must be a plain, concise, and definite written statement of the essential facts constituting the offense charged and must be signed by an attorney for the government. It need not contain a formal introduction or conclusion. A count may incorporate by reference an allegation made in another count. A count may allege that the means by which the defendant committed the offense are unknown or that the defendant committed it by one or more specified means. For each count, the indictment . . . must give the official or customary citation of

the statute, rule, regulation, or other provision of law that the defendant is alleged to have violated.

Fed. R. Crim. P. 7. As the Eighth Circuit has held, "[a]n indictment is legally sufficient on its face if it contains all of the essential elements of the offense charged, fairly informs the defendant of the charges against which he must defend, and alleges sufficient information to allow a defendant to plead a conviction or acquittal as a bar to a subsequent prosecution." *United States v. Carter*, 270 F.3d 731, 736 (8th Cir. 2001); *see also United States v. Stanko,* 491 F.3d 408, 411-12 (8th Cir. 2007); *United States v. O'Hagan,* 139 F.3d 641, 651 (8th Cir. 1998) (holding that an indictment "should not be read in a hyper technical fashion"). The sufficiency of the indictment is to be judged by practical, and not by technical considerations. *Rood v. United States*, 340 F.2d 506, 509 (8th Cir.), *cert. denied*, 381 U.S. 906 (1965). "An indictment will ordinarily be held sufficient unless it is so defective that it cannot be said, by any reasonable construction, to charge the offense for which the defendant was convicted." *Carter*, 270 F.3d at 736. "An indictment is normally sufficient if its language tracks the statutory language." *United States v. Sewell,* 513 F.3d 820, 821 (8th Cir. 2008).

Rather, couched as a jurisdictional claim under Federal Rule of Criminal Procedure 12(b)(3)(B), Defendant argues that because the murder of Henderson-Shaw did not occur "during" the drug-trafficking crime alleged in Count One, Count Two is "spatially and temporally separate and distinct" from Count One. Defendant explains that the drug transaction was "complete as of the transfer of [the drugs] from [Defendant] to [victim]," and, therefore, "nothing that happened after the completion of the crime charged in Count One can be part of the 924(c) crime alleged in Count Two." Defendant continues that "no logic permits the inference that shooting a drug buyer after a distribution was complete and half a mile away could be in furtherance of the already completed drug distribution." According to Defendant, "[n]o such connection in time, space, or substantive continuity exists in [Defendant's] case to merge the drug distribution and the shooting,

which occurred at different times and locations about half a mile apart and were self evidently motivated by different intentions and impulses."

Here, in addition to the underlying drug distribution charged in Count One, Defendant also is charged in Count Two with possessing a firearm during and in relation to that drug distribution, and in the course thereof, causing the death of a person through the use of the firearm. Section 924(c) provides that "any person who, during and in relation to any crime of violence or drug trafficking crime[,] . . . uses or carries a firearm," shall receive a five-year mandatory minimum sentence. 18 U.S.C. § 924(c). Section 924(j) provides for an enhanced sentence for any person "who, in the course of a violation of subsection (c), causes the death of a person through the use of a firearm." 18 U.S.C. § 924(j).

With respect to Count Two, the United States charged the Defendant under an aiding and abetting theory pursuant to Title 18, United States Code, Section 2. As recently stated by the United States Supreme Court in *Rosemond v. United States*, -- U.S.--, 134 S.Ct. 1240, 1242 (2014), the United States establishes that a defendant aided and abetted a Section 924(c) violation "by proving that the defendant actively participated in the underlying drug trafficking or violent crime with advance knowledge that a confederate would use or carry a gun during the crime's commission." "[A] defendant can be convicted as an aider and abettor without proof that he participated in each and every element of the offense." *Id.* at 1246.

Taking a very distorted view of the United States' evidence, Defendant argues that because the drug transaction between Defendant was already "completed" that the firearm used to kill Henderson-Shaw and her actual killing could not have been "in furtherance" of the drug distribution. Defendant argues that they are two distinct crimes and, thus, the firearm and its use in this case cannot support a Section 924(c) and (j) conviction. By Defendant's reading of the statutes, Section 924(c) and (j) charges could never be filed unless the shooting occurred

prior to the drug distribution or at the exact same time that the controlled substance was handed to the buyer. Obviously, Defendant's interpretation of the statutes is illogical.

Indeed, courts have consistently upheld convictions where the firearm was possessed or used *after* the drug distribution occurred, whether the theory presented was that the firearm was used to protect the proceeds the seller received from the distribution, in retaliation for drug debts or inadequate drugs being sold, or to prevent future robberies of the seller's drug proceeds or product. *See, e.g.*, *Rosemond,* 134 S.Ct. at 1243-44 (finding 924(c) charge proper where defendant or one of his accomplices used firearm to shoot at buyer after buyer fled with drugs without paying); *United States v. Garcia-Hernandez,* 530 F.3d 657 (8th Cir. 2008) (holding that a "person's possession of a firearm furthers a drug distribution conspiracy crime when he uses it to frighten another person into paying a debt owed for a previous drug transaction"); *United States v. Rolon-Ramos,* 502 F.3d 750 (8th Cir. 2007); *United States v. Miller*, 283 F.3d 283 F.3d 907 (8th Cir. 2002) (upholding 924(j) conviction under aiding and abetting theory where either defendant or one of his accomplices shot and killed another accomplice after getting into an argument as to what portion of the cocaine defendant should receive from their earlier robbery of another individual). In fact, the Court in *Rosemond* held that a Section 924(c) offense is a "combination crime," explaining that "[i]t punishes the temporal and relational conjunction of two separate acts, on the ground that together they pose an extreme risk of harm." *Rosemond*, 134 S.Ct. at 1248.

Here, the United States will present ample evidence at trial that Defendant chased and killed Henderson-Shaw immediately after and as a result of the drug transaction. The United States will assert that the drug transaction was not, in fact, "completed" at the time Henderson-Shaw was murdered, as alleged by Defendant. Rather, the United States will argue that Defendant shot Henderson-Shaw in retaliation for Henderson-Shaw's failure to pay

Defendant enough or at all for the crack cocaine. The United States also may assert that Defendant did so to recoup from Henderson-Shaw either, or both, the proceeds he was owed or the crack cocaine he distributed. The United States may assert that Defendant shot Henderson-Shaw to prevent being robbed in the future, *i.e.*, to "send a message" that Defendant and his accomplices cannot be robbed of their product so easily. As Defendant is aware from the voluminous discovery produced in this case, the United States certainly has sufficient evidence to support these allegations. However, as indicated below, a challenge as to whether the United States has sufficient evidence to establish the connection between Counts One and Two is premature at this stage.

Accordingly, because the indictment contains all of the essential elements of the offense charged, it is legally sufficient. Defendant's motion, therefore, should be denied.

**B.     The Defendant's Challenge to the Sufficiency of the United States' Evidence is Premature.**

In a similar, though seemingly separate argument, Defendant asserts that Count Two of the Indictment should be dismissed because the United States has no evidence that Defendant possessed a firearm during the drug distribution or as to who killed the victim in the case. Simply, Defendant is seeking a pretrial ruling that the United States' evidence does not satisfy the "in furtherance of" element of the 924(c) charge or the sentencing enhancement prong under 924(j). In other words, Defendant is seeking the equivalent of an order granting summary judgment in his favor.

First, the United States adamantly disagrees with Defendant's characterization of its evidence and strongly believes it will prove beyond a reasonable doubt all elements of the crimes as charged in Counts One and Two. Nevertheless, Defendant's request for a ruling on the sufficiency of the United States' evidence is premature, as no such procedure exists.

A defendant may file a pretrial motion to dismiss an indictment on various grounds. *See, e.g.,* Fed.R.Crim.P. 12(b). However, sufficiency of the evidence is not one of those grounds. Indeed, "[i]t has long been settled that an indictment is not open to challenge on the ground that there was inadequate or insufficient evidence before the grand jury. *United States v. Nelson*, 165 F.3d 1180, 1182 (8th Cir. 1999) (citing *Costello v. United States*, 350 U.S. 359, 363-64, 76 S.Ct. 406 (1956)). In other words, the Federal Rules of Criminal Procedure do not permit the functional equivalent of a motion for summary judgment, whereby a defendant may test the sufficiency of the United States' evidence in advance of trial. *See, e.g., United States v. Ferro*, 252 F.3d 964, 967-68 (8th Cir. 2001) (citing *United States v. Gaudin*, 515 U.S. 506, 523 (1995); *see also United States v. Jones*, 556 F.Supp.2d 985, 991 (E.D.Mo. 2008). Rather, the sufficiency of evidence may be tested by a motion for acquittal pursuant to Rule 29, after the Government closes its evidence at trial. *Ferro,* 252 F.3d at 968; Fed.R.Crim.P. 29(a).

As a result, the sufficiency of the United States' evidence cannot be determined until, at the earliest, the United States has rested its case at trial. In any event, the United States will present more than sufficient evidence at trial. Accordingly, Defendant's motion should be denied.

## IV. CONCLUSION

For the foregoing reasons, the United States of America respectfully requests that this Court deny the Defendant's Motion to Dismiss.

Respectfully submitted,

RICHARD G. CALLAHAN
United States Attorney


 /s/ Sayler A. Fleming
SAYLER A. FLEMING, #58775MO
Assistant United States Attorney
111 S. 10th Street, 20th Floor
St. Louis, Missouri   63102
(314) 539-2200
sayler.fleming@usdoj.gov

## CERTIFICATE OF SERVICE

I hereby certify that on April 17, 2014, the foregoing was filed electronically with the Clerk of the Court to be served by operation of the Court's electronic filing system upon the following:

All Attorneys of Record for Defendants.


 /s/ Sayler A. Fleming
SAYLER A. FLEMING, #58775MO
Assistant United States Attorney